# CIRCUIT COURT OF THE CITY OF RICHMOND

In re Estate of
Richard Harvey Cavan, Jr.,
deceased

March 19, 1997

BY JUDGE RANDALL G. JOHNSON

This is an appeal from a decision of the commissioner of accounts of the City of Richmond. The commissioner's decision involves a loan made with funds of a decedent's estate to Richard H. Lyerly, who is one of two executors of the estate, and his wife. The other executor, Charles O. Boyles, a lawyer, prepared the note and accompanying deed of trust.

The loan is in the original principal amount of $225,000, with interest at 7.5% per year. It is secured by a deed of trust on the Lyerly's home. Upon learning of the loan, the commissioner directed the Lyerlys to repay the loan to the estate immediately. The Lyerlys refused. At the beginning of the ore tenus hearing in court, however, Mr. Lyerly stated that the loan would be repaid, but that since he will have to obtain a new loan to make repayment, he wants the estate to pay the closing costs for the new loan. His request will be denied.

The prohibition against "self-dealing" by an executor with an estate is so entrenched in our law that citation to the cases should be unnecessary. As early as 1824, our highest court said:

> [A] sale by an executor, for the purpose of paying his own debt, and a fortiori, a deed of trust made by him, to secure the payment of his own proper debt, when he is not in advance to the estate, so as to make such sale or encumbrance proper, is a fraudulent waste of the assets … .

*Dobson v. Simpson*, 23 Va. (2 Rand.) 294, 300 (1824) (opinion of Coalter, J).
In *Asberry v. Asberry*, 74 Va. (33 Gratt.) 463 (1880), the court said:

The use of the assets by the personal representative for his own private purposes, or for the payment of his own debts, is necessarily a misapplication of trust funds, and a breach of trust. When he so appropriates the money of the estate he thereby becomes a borrower, throwing upon his *cestui que trust*, and upon the sureties on his official bond, all the risks of his continued solvency. The duty of every fiduciary is to keep the trust fund separate and distinct from his own property or money, and to apply it in a due course of administration, or to invest it securely for the benefit of the parties entitled. By so doing it can be identified and followed in the event of his death or insolvency. When, however, the fiduciary uses the trust money for his private purposes, the fund is forever gone, and the *cestui que trust* must incur all the hazards of the fiduciaries' insolvency. These are elementary principles; and it is a matter of some surprise they should have been so earnestly controverted at the bar. They apply to all fiduciaries, having trust funds in their hands, whether executors, administrators or guardians.

74 Va. (33 Gratt.) at 469.

These principles are no less true today. *See, e.g., Owens v. Owens*, 196 Va. 966, 86 S.E.2d 181 (1955). Had Mr. Lyerly not agreed to repay the loan immediately, he would have been ordered to do so.

For the same reason, the estate cannot be made to pay the costs incurred in obtaining a new loan. Indeed, the purpose of obtaining a new loan is to undo what was improperly done in the first place. If there is a cost for doing so, it must be borne by the Lyerlys; not by the estate.

Finally, although not requested or suggested by the commissioner, the court has considered whether it is appropriate to remove the executors. The court is especially concerned that Mr. Boyles, a lawyer, would participate in the subject transaction in light of the prohibition so clearly established in the law. The court has considered the arguments and statements made at the hearing, however, and will allow the executors to continue in their duties. The court is confident that this type of transaction will not recur.